1
2
3                    UNITED STATES DISTRICT COURT
4                    NORTHERN DISTRICT OF CALIFORNIA
5
6    DARRELL D. FOLEY,
7              Plaintiff,                    No. C 06-7294 PJH
8         v.                                 **ORDER DISMISSING COMPLAINT**
                                             **AND DENYING REQUEST TO**
9    TOM BATES, et al.,                      **PROCEED IN FORMA PAUPERIS**
10             Defendants.
     _____/
11
12        Plaintiff Darrell D. Foley ("plaintiff") filed the instant complaint on November 27,
13   2006, along with an application to proceed in forma pauperis.  Because the court finds that
14   the complaint must be dismissed under 28 U.S.C. § 1915(e)(2), the request for leave to
15   proceed in forma pauperis is DENIED.
16                              **BACKGROUND**
17        Plaintiff is a resident of Alameda County, California.  He participates in a transitional
18   housing program operated by Building Opportunities for Self-Sufficiency ("BOSS").  BOSS
19   owns and maintains a residence property for its program members, located at 2240 9th
20   Street in Berkeley, California (the "Ninth Street" property), where plaintiff currently resides.
21   Plaintiff pays rent there on a month to month schedule.  See Complaint: Demand for Jury
22   Trial ("Complaint"), at 3.
23        Plaintiff brings the instant action against four separate defendants: Tom Bates, the
24   Mayor of Berkeley, whom plaintiff sues in his official capacity only; Boona Cheema, alleged
25   director of BOSS, whom plaintiff sues in her official and individual capacity; California
26   Superior Court for the County of Alameda; and the federal district court for the Northern
27   District of California.  See Complaint at 2.
28        Plaintiff's complaint generally takes issue with numerous aspects of BOSS'

United States District Court
For the Northern District of California

transitional housing program, its rental policies, and its treatment of plaintiff's tenancy. While the complaint is non-sensical in parts, the court has construed it liberally in order to give plaintiff the benefit of the doubt where possible.

Generally speaking, plaintiff's allegations can be grouped into five general areas: (1) allegations concerning the rent schedule maintained by BOSS; (2) allegations concerning plaintiff's actual rent payments to BOSS under the schedule; (3) allegations that a BOSS employee assaulted him; (4) allegations regarding unlawful activity on the Ninth Street property; and (5) allegations that some or all defendants retaliated against plaintiff in response to his complaints regarding the foregoing activity.  All activity alleged by plaintiffs occurred between June 2006 and December 2006.

First, plaintiff alleges that the rent schedule applied to residents of the Ninth Street property is unfair.  Plaintiff alleges that residents – all of whom are low income – are charged either $100 or $325 in monthly rent.  See id. at 6.  The amount is determined at the time of initial move-in, and is based on the amount of income that a resident has at the time of move-in (e.g., an unemployed tenant would pay $100, while a tenant making more money is charged $325).  Id.  Plaintiff alleges, however, that the initial determination of a resident's rental amount is not thereafter modified to take into account subsequent changes in income.  For example, even though a resident who was initially unemployed (i.e., assigned to the $100 rental amount) later gains employment, that resident's rental payment never increases to the $325 payment amount.  Id.  According to plaintiff, this two-rate rental schedule is "highly discriminatory," as well as "arbitrary and inherently prone to ... numerous abuses...".  Id. at 4.  Plaintiff alleges, for example, that despite receiving the "exact same" welfare payment as at least one other tenant, he is being charged twice as much in monthly rent.  See Complaint at 6.  He also asserts that there are also other tenants who earn more money than he does, but pay less rent.  Id.

Second, plaintiff alleges that he has been treated unfairly with respect to his actual rent payments.  Specifically, he alleges that defendants have improperly withheld a rental

2

United States District Court

For the Northern District of California

rebate that should have been credited to him.  See Complaint at 4.  Plaintiff claims that in June 2006, the Ninth Street property manager lowered plaintiff's monthly rent from $325 to $200, owing to plaintiff's unemployment at the time.[1]  Id.  The manager also approved a rebate of $750 for plaintiff, in order to credit plaintiff back with $125 per month for the 6 months that plaintiff had spent unemployed prior to the adjustment in his rent.  Id.  According to plaintiff, however, he never actually received the $750 rebate.  The manager who approved the rebate retired shortly after doing so, and despite plaintiff's efforts to secure the money – either via rent off-sets or cash – no subsequent BOSS employee has ever been willing to actually provide him with the rebate.  See id. at 5, 7.

Third, plaintiff also complains that he was "assaulted" by defendants.  Complaint at 8.  According to plaintiff, on October 10, 2006 around 11 p.m., BOSS employee Mary Duley, and an unknown male companion, illegally trespassed onto the Ninth Street property.[2]  Plaintiff was awakened when Ms. Duley came onto the property, as a result of her "loud and party-like trespass."  See id. at 9.  Plaintiff came out of his residence into the hallway, where he noted Ms. Duley coming towards him from the opposite direction.  According to plaintiff, Ms. Duley passed by him and "intentionally put her shoulder into [p]laintiff as [p]laintiff passed."  Complaint at 9.  Plaintiff then dialed 911 and reported the alleged assault.  While the police came to investigate, and plaintiff purportedly sought to press charges against Ms. Duley, plaintiff does not allege than an actual resulting arrest took place.  Plaintiff contends, however, that the assault was made all the more egregious, because Ms. Duley was "impersonating" a social worker at the time.  Id. at 10.

Fourth, plaintiff complains of certain activities undertaken by defendants with respect

---

[1]    The court notes that these allegations are directly contrary to plaintiff's claims that the two-tier rental policy employed by BOSS is never modified after initial move-in.

[2]    Apparently, plaintiff believes that Ms. Duly's presence on BOSS property was an illegal trespass, as opposed to a lawful authorized entry by a BOSS employee, based on a Notice of Termination that plaintiff or another unnamed party served on "defendants" on August 1, 2006.  Although the logic of these allegations is not wholly clear, plaintiff appears to believe that, since this notice was served on defendants, defendants were stripped of all authority to come onto the property.  See Complaint at 8.

United States District Court

For the Northern District of California

to the Ninth Street property.  Plaintiff alleges, for example, that as far back as August 2006,
defendants have been on notice of the need to fix the deadbolt lock on the front door of the
Ninth Street property.  See Complaint at 9, 19.  Yet, despite the property being located "in a
high crime area," defendants have failed to remedy the problem.  Id.  Plaintiff also claims
that defendants were aware of troublesome and/or unlawful activity on the part of one of its
other residents, a parolee whom plaintiff asserts is a "violent ex-con."  See id. at 19.
Plaintiff alleges that he informed the Berkeley Police Department in August 2006 that the
resident parolee was falsely representing to his parole officer that he lived on the property,
when in fact he was not continuously residing there.  Plaintiff also alleges that he got into
an altercation with the parolee, who threatened to kill plaintiff.  See id. at 17.  According to
plaintiff, BOSS employees and agents, including defendant Boona Cheema, were aware of
these facts, but did nothing.  See id. at 19.  And in November 2006, plaintiff alleges that a
Berkeley city employee came onto the property and entered inside the residents' private
bedrooms without the consent or prior notice of the occupants, in violation of the Landlord-
Tenant Act.  See id. at 8.

Finally, plaintiff raises the specter of retaliation by defendants.  He claims that
defendants are retaliating against him as a result of his complaints about defendants'
actions.  He notes that on July 26, 2006, for example, while plaintiff was attempting to
receive his rebate from BOSS, he emailed the defendant mayor and various city council
members with his concerns about BOSS.  Although plaintiff does not allege the precise
nature of his communication with these city officials, he alleges that defendants have been
purposefully withholding his rebate in retaliation for such communications.  See Complaint
at 4-5.

As a result of defendants' alleged conduct, plaintiff has instituted the instant action,
alleging eight causes of action (plaintiff incorrectly numbers his complaint as stating nine):
(1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress;
(3) violation(s) of 42 U.S.C. § 1983; (4) abuse of process; (5) violation(s) of the Fourteenth

4

United States District Court

For the Northern District of California

1  Amendment; (6) violation(s) of the Fifth Amendment; (7) violation(s) of the First

2  Amendment; and (8) violation(s) of the Fourth Amendment.[3]

3  **DISCUSSION**

4  A.   Legal Standard

5  Under 28 U.S.C. § 1915(a), "[a]ny court of the United States may authorize the

6  commencement . . . of any suit . . . without prepayment of fees and costs or security

7  therefor, by a person who makes affidavit that he is unable to pay such costs or give

8  security therefor."  In reviewing an application to proceed in forma pauperis, the court may

9  dismiss a case sua sponte if the court determines that the party applying for in forma

10  pauperis status has filed a frivolous action.  28 U.S.C. § 1915(e)(2); Jackson v. Arizona,

11  885 F.2d 639, 640 (9th Cir. 1989).  For purposes of 28 U.S.C. § 1915, a frivolous claim is

12  one that lacks an arguable basis in either law or fact.  Neitzke v. Williams, 490 U.S. 319,

13  325, 109 S. Ct. 1827, 1831-32 (1989).  Dismissal on these grounds is often made sua

14  sponte prior to the issuance of process, so as to spare prospective defendants the

15  inconvenience and expense of answering such complaints.  Id., 490 U.S. at 324, 109 S. Ct.

16  at 1831.

17  Where a litigant is acting pro se and the court finds the litigant's complaint frivolous

18  within the meaning of 28 U.S.C. § 1915(e)(2), the court must give the litigant notice of the

19  deficiencies of the complaint and an opportunity to amend before final dismissal, unless it is

20  absolutely clear that the deficiencies of the complaint could not be cured by amendment.

21  Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987); Eldridge v. Block, 832 F.2d 1132,

22

23  _____

[3]   Plaintiff references three pending state law actions, and two federal actions
24  currently pending in this district, alleging that all constitute related litigation.  See Complaint at
2, 11-17.  However, it is impossible to determine from plaintiff's complaint the nature of those
25  purportedly related actions, and whether they are in fact even relevant to the instant case.
Moreover, with respect to at least one of the federal actions (only the federal actions can even
26  be deemed officially 'related' pursuant to the local rules), Judge White – before whom the
action is pending – has already deemed that case to be *un*related to the instant action brought
27  by plaintiff.  Accordingly, in view of this, and the generally incomprehensible nature of plaintiff's
allegations, the court disregards plaintiff's allegations related to other pending litigation in the
28  state and federal courts, finding them irrelevant to the case at bar.

1    1135-37 (9th Cir. 1987).

2        B.    Legal Analysis

3        The court has carefully reviewed the complaint and finds that it fails to state a claim

4    under Federal Rule of Civil Procedure 8, which requires that a complaint "contain ... a short

5    and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

6    P. 8(a).  Under the "notice pleading" standard embraced by Rule 8, a plaintiff satisfies the

7    rule when he or she includes "sufficient allegations to put defendants fairly on notice of the

8    claims against them."  McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

9        As an initial matter, the court finds that the complaint must be dismissed because it

10   fails to put each defendant on notice of the claim or claims being asserted against him/her.

11   Plaintiff does not allege his specific claims against any specific defendant.  Rather, he

12   generally alleges all eight claims against "all defendants," without identifying which

13   defendant is responsible for his alleged injuries.  This is an impermissible attempt to sweep

14   all four defendants into the lawsuit without making specific allegations as to any.

15       Moreover, despite the broadly worded assertions of the complaint, it is obvious that

16   plaintiff's claims cannot even be asserted against all defendants.  Specifically, the state

17   superior court and federal district court defendants cannot be held liable, in view of the

18   existence of Eleventh Amendment immunity, and sovereign immunity.  See Atascadero

19   State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)(Eleventh Amendment protects states

20   and their entities against suits brought by citizens in federal court); Montana v. Goldin, 394

21   F.3d 1189, 1195 (9th Cir.2005)(state agencies are protected by Eleventh Amendment

22   immunity); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994)("Absent a waiver,

23   sovereign immunity shields the Federal Government and its agencies from suit"); Gilbert v.

24   DaGrossa, 756 F.2d 1455, 1458-59 (9th Cir.1985)(bar of sovereign immunity applies in suit

25   against officers and employees of the United States in their official capacities).

26       The only way for plaintiff to avoid these immunity doctrines is to establish that

27   recognized exceptions to the doctrines apply.  With respect to the California superior court

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

defendant, Eleventh Amendment immunity will not apply if plaintiff can demonstrate (1) that the defendant has waived its Eleventh Amendment immunity; (2) that Congress has overridden it; or (3) that the suit is being brought for injunctive relief against a state official. See Douglas v. Cal. Dept. of Youth Authority, 271 F.3d 812, 817-18 (9th Cir. 2001). Similarly, with regard to the federal district court defendant, sovereign immunity will not apply if plaintiff can demonstrate that the federal district court defendant unambiguously waived its sovereign immunity, or otherwise consented to suit.  See DaGrossa, 756 F.2d 1458-59; Lane v. Pena, 518 U.S. 187 (1996)("[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed [by Congress] in statutory text"); United States v. Sherwood, 312 U.S. 584, 586 (1941)("The United States is immune from suit save as it ... consents to be sued.").

Here, however, plaintiff fails to allege that any exception to either form of immunity applies to either defendant.  Plaintiff makes no claim that the California state defendant has waived its Eleventh Amendment immunity, or that Congress has abrogated it under any statutes pled, or that the suit is being brought for injunctive relief against a state official. Nor does plaintiff allege that, with respect to the Northern District of Califonrnia defendant, that arm of the federal government has waived immunity or consented to suit.  As a result, the court finds that plaintiff cannot bring a claim against either the California superior court or federal court defendants here, and all claims as to these defendants are frivolous.

While the above observations are sufficient to warrant dismissal of plaintiff's claims against defendants, the court nonetheless turns to the merits of each of the causes of action asserted by plaintiff.  As explained below, in addition to the problems already noted above, plaintiff fails to allege facts supporting each separate cause of action.  Thus, even if plaintiff had placed each defendant on notice of the violations alleged against each defendant, and furthermore stated sufficient allegations to avoid an immunity bar as to two of the four defendants, plaintiff's complaint would still be dismissed for failure to state a claim as to all causes of action.

United States District Court

For the Northern District of California

1          1.      Intentional Infliction of Emotional Distress

2          Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED").  The

3  elements of a claim for intentional infliction of emotional distress are (1) extreme and

4  outrageous conduct by the defendant with the intention of causing, or reckless disregard of

5  the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

6  emotional distress; and (3) actual and proximate causation of the emotional distress by the

7  defendant's outrageous conduct.  See, e.g., Cervantes v. J.C. Penney Co., 24 Cal. 3d 579,

8  593 (1979); see also Christensen v. Superior Court, 54 Cal. 3d 868, 904-05 (1991).

9          Here, although inarticulately pled, plaintiffs' claims appear to be premised on:  (1) the

10  allegation that "[d]efendants take $200 from [p]laintiff's $336 monthly welfare stipend, but

11  only $100 from other tenants"; (2) the allegation that plaintiff was "assaulted by a prostitute

12  posing as a licensed, degreed, trained and experienced social worker" as well as "by an ex-

13  con who was absconding ... at the time of the assault"; (3) the allegation that plaintiff had

14  "his rent rebate from renting public-assisted housing withdrawn"; (4) the allegation that he

15  has been subjected "to the degrading experience of having the most despicable,

16  unqualified individuals review the most sensitive of his personal information contained in his

17  case file"; and (5) defendants' failure to make the premises safe by replacing a deadbolt

18  lock.  See Complaint at 22.

19          These allegations are insufficient to support plaintiff's IIED claim.  First, plaintiff fails

20  to plead facts showing that he suffered the requisite level of emotional distress.  Severe or

21  extreme emotional distress means "emotional distress of such substantial quantity or

22  enduring quality that no reasonable [person] in a civilized society should be expected to

23  endure it." Butler-Rupp v. Lourdeaux, 134 Cal. App. 4th 1220, 1226 (2005).  A mere

24  momentary or transitory emotional distress is insufficient to constitute severe emotional

25  distress.  See Kiseskey v. Carpenters' Trust for So. Cal., 144 Cal. App. 3d 222, 231 (1983)

26  (finding plaintiff's allegation of resulting heart attack sufficiently severe).

27          Here, all but the second of the allegations noted above constitute, at best, a claim

28

8

United States District Court

For the Northern District of California

that plaintiff suffered some distress because of defendants' acts in charging plaintiff a differing rent amount from others, in calculating his rent payments, in having individuals whom plaintiff dislikes greatly review his case file, and in failing to replace a deadbolt lock. But there are no allegations supporting the inference that the resulting distress was of such severity that "no reasonable [person] in a civilized society should be expected to endure it." This is particularly so, given that plaintiff himself alleges that his tenancy at the Ninth Street Property is part of a transitional housing program with guidelines governing the rent amounts that residents are required to pay, depending on their individual circumstances. This allegation cuts against plaintiff's claim, as it supports a reasonable inference that such a program inherently involves an individualized determination of rent, as well as at least a periodic review of a resident's case file.

With respect to the remaining allegation upon which plaintiff bases his claim – i.e., that he was assaulted by a prostitute posing as a social worker – this allegation, liberally read, might very well suffice in alleging severe emotional distress.  However, despite this, plaintiff has still failed to plead actual and proximate causation of his emotional distress by the *defendant*'s outrageous conduct.  As explained before, by virtue of the state and federal defendants' immunity from suit, the only remaining defendants against whom plaintiff's claim may lie are Boona Cheema, the alleged Director for the transitional housing program in which plaintiff participates, and Tom Bates, mayor of Berkeley.  However, plaintiff's allegations say nothing about whether the alleged assault that occurred was conducted or ordered by either defendant, or within either defendant's control.  Indeed, plaintiff does not even state what relation the alleged unnamed "prostitute" had with either defendant.[4]  As a result, plaintiff has failed to allege sufficient facts demonstrating that the appropriate

_____

[4]      While the court notes that elsewhere in his complaint, plaintiff refers to an assault by Ms. Duley, a BOSS employee, he nowhere states that Ms. Duley herself is a prostitute, such that the court can be certain that plaintiff is referring to the same individual.  And even if he were, plaintiff has failed to set forth any allegations connecting Ms. Duley's actions to Ms. Cheema.

United States District Court

For the Northern District of California

1  defendant, through his/her outrageous conduct, has proximately caused plaintiff's severe

2  emotional distress.

3          In view of the above, plaintiff has failed to state a claim for intentional infliction of

4  emotional distress, and the claim is accordingly dismissed.

5                        2.       Negligent Infliction of Emotional Distress

6          Plaintiff also alleges a claim of negligent infliction of emotional distress.  In California,

7  there is no independent tort of negligent infliction of emotional distress.  See Potter v.

8  Firestone Tire & Rubber Co., 6 Cal. 4th 965, 981 (1993).  Negligent infliction of emotional

9  distress is merely a form of the tort of negligence.  See Huggins v. Longs Drug Stores

10  California, Inc., 6 Cal. 4th 124, 129 (1993).  Thus, to establish a claim for negligent infliction

11  of emotional distress, the plaintiff must set forth each of the elements of negligence: (1)

12  duty; (2) negligent breach of duty; (3) legal cause; and (4) damages caused by the

13  negligent breach.  See Friedman v. Merck & Co., 107 Cal. App. 4th 454, 463 (2003).

14          There is no duty, however, "to avoid negligently causing emotional distress to

15  another...".  Potter, 6 Cal. 4th at 984.  Unless the defendant "has assumed a duty to plaintiff

16  in which the emotional condition of the plaintiff is an object, recovery is available only if the

17  emotional distress arises out of the defendant's breach of some other legal duty and the

18  emotional distress is proximately caused by that breach of duty."  Gu v. BMW of North

19  America, LLC, 132 Cal. App. 4th 195 (2005).  A legal duty "may be imposed by law, be

20  assumed by the defendant, or exist by virtue of a special relationship."  Potter, 6 Cal. 4th at

21  985; Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal. 3d 583, 590 (1989).

22          Applying these standards to the case at bar, plaintiff has failed to adequately state a

23  claim for negligence, as he fails to adequately allege the element of duty.  As to this first

24  and critical element – and construing plaintiff's complaint liberally – plaintiff alleges that the

25  transitional housing statutes require: (1) that the defendants provide "safe, healthful and

26  comfortable home accommodations, furnishing, and equipment"; (2) that plaintiff "be

27  treated with respect and [be] free from physical, emotional, or other abuse; and (3) that

28

United States District Court

For the Northern District of California

1   plaintiff "be free from corporal punishment or unusual punishment, humiliation, intimidation,

2   ridicule, coercion, threat abuse, or other actions of a punitive nature...".  Complaint at 23.

3       However, these allegations are insufficient to establish a legal duty owed from any

4   defendant to plaintiff, which is "imposed by law, assumed by the defendant, or exist[s] by

5   virtue of a special relationship."  First, although the allegations purport to paraphrase the

6   duties set forth by the "transitional Housing Statutes (Title 22, division 26)," the court could

7   find no law actually existing by that name, or by that citation, let alone could it confirm that

8   the allegations made by plaintiff actually reiterate certain duties imposed on any defendant

9   by law.  Second, plaintiff makes no allegation that any defendant has independently

10  assumed any legal duties owed to plaintiff.  Third, plaintiff fails to identify any special

11  relationship that would support imposition of a legal duty upon any defendant.

12      Because plaintiff alleges no facts supporting the requisite element of duty, plaintiff

13  cannot state a claim for negligent infliction of emotional distress.  The claim must therefore

14  be dismissed.

15          3.     42 U.S.C. § 1983

16      Plaintiff alleges a claim under 42 U.S.C. § 1983.  Section 1983 "provides a cause of

17  action for the 'deprivation of any rights, privileges, or immunities secured by the

18  Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498,

19  508 (1990).  Section 1983 is not itself a source of substantive rights, but merely provides a

20  method for vindicating federal rights elsewhere conferred.  See Graham v. Connor, 490

21  U.S. 386, 393-94 (1989).  To state a claim under § 1983, a plaintiff must allege two

22  essential elements: (1) that a right secured by the Constitution or laws of the United States

23  was violated and (2) that the alleged violation was committed by a person acting under

24  color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda

25  County, 811 F.2d 1243, 1245 (9th Cir. 1987).

26      Plaintiff fails to adequately establish either element.  First, the complaint does not

27  adequately identify the statutory or constitutional right that is the basis for plaintiff's section

28

11

United States District Court

For the Northern District of California

1983 claim.  Indeed, plaintiff's allegations regarding this claim read as a hodgepodge of disjointed statements and conclusory opinions regarding the illegal nature of defendants' actions.  Plaintiff makes reference, for example, to various *state* statutes, that do not qualify as federal rights, and to his "life, liberty, and property" interest, which is not, standing alone, a sufficiently identifiable federal right.  Plaintiff also refers to "malicious prosecution" as a basis for his claim, followed by numerous purported examples of such malicious prosecution, many of which are nonsensical.  See, e.g., Complaint at 25 ("after acquiring knowledge that the District Court vexatious litigant proceeding was a pending District Court case ... the state defendants fail to conduct a reasonable inquiry proper to bringing the duplicate motion in state court").  None of these allegations, however, is sufficient to establish that "the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."  Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir.2004)(reciting elements for section 1983 claim based on malicious prosecution).

Finally, while plaintiff does make reference at certain points to various recognized constitutional rights – specifically, the First, Fourth, Fifth and Fourteenth Amendments – plaintiff's allegations in this regard are wholly conclusory, and the court cannot discern any relation between the facts that plaintiff alleges, and the federal amendments he invokes.  See Easton v. Crossland Mortgage Corp., 114 F.3d 979, 982 (9th Cir. 1997)(in order for plaintiff to state a claim under section 1983, it must be clear from the face of plaintiff's well-pleaded complaint that there is a federal question).  Plaintiff does assert several free-standing causes of action for violation of each constitutional amendment elsewhere in his complaint.  However, even liberally interpreting these independent claims as brought under section 1983, plaintiff fails to state a claim under any of them, as described in the court's subsequent analysis.

Second, and moreover, even if plaintiff's had managed to adequately allege that his federal and/or constitutional rights were violated, plaintiff would still face hurdles in

United States District Court

For the Northern District of California

satisfying the second requisite element of a section 1983 claim – i.e., that any alleged violation was committed by a person acting under color of state law.  See  West v. Atkins, 487 U.S. at 48-49 (A person acts under color of state law if he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.").

As noted at the outset of this discussion, the California superior court and federal court defendants are immune from suit.  This leaves defendants Mr. Bates and Ms. Cheema.  With respect to Mr. Bates – Berkeley's mayor – plaintiff's complaint contains no allegations that Mr. Bates is acting under color of state law.  Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law, but the employee's actions are not taken under color of state law if they are not in any way related to the performance of his duties as a public official .  See  Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997); Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 479 (9th Cir. 1991).  Here, plaintiff has completely failed to identify any allegations that specifically target Mr. Bates, or demonstrate in any way that Mr. Bates was taking specific actions against plaintiff, let alone does plaintiff allege that Mr. Bates was exercising any responsibilities pursuant to state law.

With respect to Ms. Cheema, plaintiff has similarly failed to adequately allege that she is acting under color of state law.  Ms. Cheema appears to be a private individual defendant.  Although plaintiff alleges her to be a "state defendant," there are no factual allegations that actually support this claim.  From all of plaintiff's descriptions of BOSS, it appears to be a private non-profit organization, for which Ms. Cheema acts as director.  Generally speaking, a private individual does not act under color of state law for purposes of section 1983 liability.  See Gomez v. Toledo, 446 U.S. 635, 640 (1980).  An exception to this rule exists "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288,

United States District Court

For the Northern District of California

1    295-96 (2001) (internal quotation marks omitted).

2         Here, plaintiff alleges only that BOSS receives 100% of its funding from "the citizens

3    of Berkeley;" that BOSS receives "state-granted, complete tax exemptions on any property

4    taxes and income taxes usually charged on a rental property; that BOSS "receives all of its

5    properties for its programs from the City of Berkeley; and that BOSS "cannot make a move

6    with the property without the consent of the Mayor, City Counsel, and the Berkeley Housing

7    Authority." See Complaint at 29.   Aside from the insufficiency of some of these allegations

8    on their face (i.e., funding from Berkeley "citizens" does not constitute funding by the

9    State), none of these allegations actually states any facts that embrace Ms. Cheema

10   herself, or otherwise indicate that Ms. Cheema or her role/actions on behalf of BOSS

11   consisted of concerted action with the State, as plaintiff claims.  See, e.g., Complaint at 28;

12   see also Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999)(to be liable

13   under § 1983, the defendant's actions must have caused the alleged violation); May v.

14   Animate, 633 F.2d 164, 167 (9th Cir.1980)("A [§ 1983] plaintiff must allege facts, not simply

15   conclusions, that show that an individual was personally involved in the deprivation of his

16   civil rights."). As such, no sufficient nexus has been alleged between Ms. Cheema and the

17   State, for purposes of satisfying plaintiff's section 1983 prima facie case.

18        In view of plaintiff's failure to allege the requisite elements of a section 1983 claim,

19   the section 1983 claim must be dismissed for failure to state a claim.

20                  4.    Abuse of Process

21        Plaintiff next brings a claim for abuse of process.  The elements of a claim for abuse

22   of process are: (1) the defendant(s) contemplated an ulterior motive in using the process;

23   and (2) the defendant(s) committed a willful act in the use of the process not proper in the

24   regular conduct of the proceedings.  See Rusheen v. Cohen, 37 Cal. 4th 1048, 1057

25   (2006); Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal.3d

26   1157, 1168 (1986).  T]he essence of the tort is "misuse of the power of the court; it is an act

27   done in the name of the court and under its authority for the purpose of perpetrating an

28

**United States District Court**

For the Northern District of California

1   injustice." <u>Cohen</u>, 37 Cal. 4th at 1057.

2       It is difficult to fully comprehend plaintiff's allegations with regard to this claim.  It

3   appears, however, that plaintiff is in essence alleging that defendants have instituted a

4   state prosecution of plaintiff, which plaintiff claims is unwarranted "because the exact

5   process is ongoing in the federal court." <u>See</u> Complaint at 31.  Plaintiff also appears to

6   allege that defendants have filed "a duplicative vexatious litigant motion to intimidate,

7   harass, coerce, and further oppress [p]laintiff in order to obtain collateral advantage,"

8   although plaintiff does not state where this motion is pending.  <u>Id</u>.  Plaintiff includes

9   allegations, too, that a federal judge, Bankruptcy Judge Jellen, filed two vexatious litigant

10  referrals, and abused the judicial system by improperly failing to disqualify himself from one

11  of plaintiff's ongoing federal actions.  Several other allegations are made regarding

12  plaintiff's "discriminatory and oppressive rent charges," and the assault that plaintiff alleges

13  was committed against him on the Ninth Street property.  <u>See id</u>. at 31-33.

14      These allegations are insufficient to state a claim for abuse of process.  Plaintiff

15  objects, in essence, to the presence of multiple lawsuits against him in both state and

16  federal court.  However, these allegations do not state either that any defendant

17  contemplated an ulterior motive in filing the lawsuits or that such defendant(s) committed

18  any willful act in the course of the lawsuits that was not proper in the regular conduct of

19  proceedings.  In sum, plaintiff appears to really be objecting to the very existence of the

20  lawsuits.  Yet it is well-established that even if a [defendant] improperly institutes or

21  maintains an action (which, again, plaintiff has not alleged here), a [defendant]'s act of

22  improperly instituting or maintaining the action is simply not a proper basis for an abuse of

23  process action.  <u>See Oren Royal Oaks Venture</u>, 42 Cal. 3d at 1169.

24      Moreover, there is simply no law that prevents a plaintiff from being a party to more

25  than one lawsuit.  Indeed, it is often the case that a plaintiff or defendant may have more

26  than one lawsuit pending in both state and federal court.  While there may be doctrines that

27  prevent multiple litigation of the very same facts between the same parties, plaintiff has

28

15

United States District Court

For the Northern District of California

1  nowhere alleged that this is the case with respect to the numerous actions to which he

2  repeatedly refers in his complaint.

3       Finally, with respect to plaintiff's allegations going to both Judge Jellen's vexatious

4  litigant referrals, the "discriminatory and oppressive rent charges," and the purported

5  assault that took place, none support an abuse of process claim.  Judge Jellen is not a

6  party to the instant action, and would be protected by the doctrine of judicial immunity even

7  if he were.  See Mireles v. Waco, 502 U.S. 9, 11-12 (1991).  As for the alleged rent

8  charges, plaintiff does not allege that these rent charges are related to the commencement

9  or filing of any lawsuit, or are otherwise related to the "power of the courts" such that an

10  abuse of process claim is implicated.  See Cohen, 37 Cal. 4th at 1057.  The same is true

11  with respect to plaintiff's assault allegations.

12       In sum, in view of the above, plaintiff has failed to adequately state a claim for abuse

13  of process, and the claim must be, and is hereby, dismissed.

14            5.      Fourteenth Amendment

15       Plaintiff asserts his next cause of action under the Fourteenth Amendment.  Plaintiff

16  separates his claim into two sub-parts: the first is a due process claim, and the second is

17  an equal protection claim.  The Fourteenth Amendment is not self-executing, and can only

18  be brought by plaintiff pursuant to a section 1983 claim.  See Magana v. Com. of the

19  Northern Mariana Islands, 107 F.3d 1436, 1441 (9th Cir. 1997)("[s]ection 1983 is [] the

20  modern-day statute 'to enforce the Provisions of the Fourteenth Amendment to the

21  Constitution.'").  Nonetheless, even construing plaintiff's claim as properly brought, plaintiff

22  fails to state a claim under either the due process or equal protection provisions of the

23  amendment.[5]

24            a.      due process claim

25

26       [5]      This result holds true for all constitutional claims that plaintiff raises herein – i.e.,

27  even construing them as having been filed pursuant to section 1983, plaintiff would still fail to
   state a claim under any.  See discussion herein; see also discussion re section 1983 claim,

28  supra.

**United States District Court**
For the Northern District of California

1    The due process clause of the Fourteenth Amendment protects individuals against

2    governmental deprivations of "life, liberty, and property" without due process of law.  See

3    U.S. Const., amend. XIV.  "[T]he touchstone of due process is protection of the individual

4    against arbitrary action of government."  County of Sacramento v. Lewis, 523 U.S. 833, 845

5    (1998)(quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)); see also Squaw Valley

6    Development Co. v. Goldberg, 375 F.3d 936, 948 (9th Cir. 2004).  The due process clause

7    confers both procedural and substantive rights – i.e., due process violations can refer either

8    to a denial of fundamental procedural fairness (procedural due process violations) or the

9    exercise of power without any reasonable justification in the service of a legitimate

10   governmental objective (substantive due process violations).  See County of Sacramento v.

11   Lewis, 523 U.S. 833, 845-46 (1998).  Plaintiff here alleges a substantive due process

12   violation.  See Complaint at 36 ("The Defendants violate substantive due process with

13   governmental conduct that violates fundamental fairness, shocking to the universal sense

14   of justice").

15   The substantive component of the Due Process Clause "forbids the government

16   from depriving a person of life, liberty, or property in such a way that 'shocks the

17   conscience' or 'interferes with rights implicit in the concept of ordered liberty.'"  Nunez v.

18   City of Los Angeles, 147 F.3d 867, 871 (9th Cir.1998).  As a threshold matter, "[t]o

19   establish a substantive due process claim a plaintiff must ... show a government deprivation

20   of life, liberty, or property."  Nunez, 147 F.3d at 871; City of Cuyahoga Falls v. Buckeye

21   Cmty. Hope Found., 538 U.S. 188, 198 (2003) (noting threshold requirement of identifying

22   property interest); see also Squaw Valley Dev. Co., 375 F.3d at 948.  A substantive due

23   process claim can be stated through allegations that the action was "arbitrary and irrational

24   and had no relationship to a legitimate government objective."  City of Los Angeles v.

25   McLaughlin, 865 F.2d 1084, 1088 (9th Cir. 1989).

26   Here, plaintiff alleges that he has a "liberty interest in his good name, reputation,

27   honor, and integrity," although he does not specifically state how this liberty interest was

28

United States District Court

For the Northern District of California

1  violated.  Complaint at 35.  Plaintiff also alleges that he has a "property interest in his

2  welfare entitlement," and appears to allege that he was deprived of this interest because he

3  "is charged 67% of his welfare entitlement whereas other individuals in government-

4  subsidized housing are only charged a third."  Id.  Finally, included in plaintiff's statements

5  is the allegation that the concurrent proceedings in both state and federal court in which he

6  is involved – one or all of which involve vexatious litigant proceedings – "increase[] his

7  litigation burden and take[] precious resources away from [his] right to petition the court."

8  Id. at 34.

9      These allegations do not state a claim for due process violations.  Even putting aside

10 the problems already mentioned with respect to plaintiff's failure to identify specific

11 defendants or even proper defendants (plaintiff has not alleged any conduct implicating Mr.

12 Bates or Ms. Cheema personally, nor has he alleged that either is a state actor), plaintiff

13 fails to allege facts showing that any actions he complains of were arbitrary or irrational, or

14 that they had no relationship to a legitimate government purpose.  See City of Los Angeles

15 v. McLaughlin, 865 F.2d 1084.  Accordingly, the court dismisses plaintiff's claim for violation

16 of the Due Process Clause of the Fourteenth Amendment.

17                              b.    equal protection

18     Plaintiff also asserts, as part of his Fourteenth Amendment claim, an equal

19 protection claim.  He alleges that he "is being charged double to those other tenants 'similar

20 situated' in the same government subsidized property," and further alleges that "HUD rules

21 for charging rent in government assisted housing require landlords to charge a third of the

22 individual's income, not 67% that is being charged to Plaintiff."  Complaint at 36-37.

23 Plaintiff also makes numerous allegations regarding the ongoing vexatious litigation

24 proceedings that he charges are pending in both state and federal court.  Id. at 37-38.

25     In order to state a claim for violation of his equal protection rights, plaintiff must

26 allege that "the defendants acted with an intent or purpose to discriminate against the

27 plaintiff based upon membership in a protected class."  Barren v. Harrington, 152 F.3d

28

**United States District Court**
For the Northern District of California

1193, 1194 (9th Cir. 1998).  Here, however, plaintiff asserts no facts showing that any proper defendant acted with an intent or purpose to discriminate based on plaintiff's race, gender, national origin, or other protected status.  See, e.g., id. at 1194-95.  Accordingly, the court dismisses plaintiff's claim for violation of the Equal Protection Clause of the Fourteenth Amendment.

> ### 6.   Fifth Amendment

Plaintiff alleges that defendants have violated the due process clause of the Fifth Amendment.  See Complaint at 39 ("Fifth Amendment states the federal government shall not deprive any person of life, liberty, or property, without due process of law.").  Like the Due Process Clause of the Fourteenth Amendment, the Fifth Amendment's due process clause protects individuals against governmental deprivations of "life, liberty, and property" without due process of law.  See U.S. Const., amend. V.  Similarly, to establish a substantive due process claim under the Fifth Amendment, a plaintiff must also show government deprivation of life, liberty or property.  See Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 948 (9th Cir. 2004).  However, whereas the Fourteenth Amendment addresses action by state governmental actors, the Fifth Amendment targets action by federal government actors.  See, e.g., International Olympic Committee v. San Francisco Arts & Athletics, 781 F.2d 733, 736-37 (9th Cir. 1986).

Here, the only defendant with ties to the federal government is the federal district court for the Northern District of California.  As stated at the outset, however, this entity is immune from suit, and plaintiff has failed to set forth any allegations that would justify removing such immunity.  Moreover, plaintiff's allegations with respect to his Fifth Amendment due process claim are largely disjointed, and present no clear statement of facts that could give rise to a due process violation.  See Complaint at 39-41.

Accordingly, there is no circumstance under which plaintiff could state a claim for violation of his due process rights under the Fifth Amendment.  Plaintiff's claim is therefore dismissed.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7.    First Amendment

Plaintiff also alleges that defendants violated his First Amendment rights. Specifically, plaintiff asserts that defendants have violated his First Amendment right to petition the government for a redress of grievances, by "subjecting an indigent Plaintiff to three duplicative, successive vexatious referrals over a two-year period without giving Plaintiff a meaningful and timely opportunity to respond." Complaint at 41.  Plaintiff alleges that, "[w]hile the vexatious litigant statute is constitutional," defendants' "two year prosecution of [p]laintiff ... under the statute" is not.  See id.  According to plaintiff, "government actions have 'frozen' [p]laintiff's First Amendment activities," largely due to the expense that plaintiff must incur in litigating the numerous actions.[6]

To state what courts deem an "access to the courts" claim under the First Amendment, the plaintiff "must identify a nonfrivolous, arguable underlying claim" that the plaintiff has been or will be unable to pursue properly because the defendants' actions have denied the plaintiff meaningful access to the courts.  Christopher v. Harbury, 536 U.S. 403, 415 (2002).  This showing must be addressed by allegations in plaintiff's complaint that are sufficient to give fair notice to a defendant.  See id. at 416.

Here, nowhere does plaintiff set forth concrete allegations that identify with specificity the underlying legal claims upon which he bases his denial of access claim. Although his complaint elsewhere makes reference to several related cases that are pending in federal and state court, see Complaint at 2, there is no way for the court to tell which of these cases plaintiff is relying on, the current status of those cases, or even whether the defendants in those cases are the same as the defendants against whom plaintiff proceeds here.  Nor has plaintiff alleged the nonfrivolous nature of any applicable

_____

[6]    Plaintiff also states several allegations regarding "bankruptcy Judges Jellen and Newsome," as well as district court Judge Susan Illston.  See Complaint at 44.  None of these allegations are actionable, however.  First, none of the individuals is named as a defendant in plaintiff's action.  Second, even if they were, these defendants are generally entitled to absolute judicial immunity for all actions taken in their role as judges.  See, e.g., Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

United States District Court

For the Northern District of California

1  underlying legal claim.  Finally, plaintiff has also failed to allege any facts demonstrating

2  that any inability to pursue the underlying claims stems directly from any proper *defendant*'s

3  actions (as opposed to the fact that plaintiff has insufficient means with which to litigate his

4  cases).

5      In sum, plaintiff's allegations are insufficient to give fair notice to any defendant of his

6  claim for denial of access to the courts under the First Amendment.  Accordingly, the court

7  hereby dismisses that claim.

8      8.      Fourth Amendment

9      Plaintiff brings a claim against defendants for violation of the Fourth Amendment.

10  Plaintiff alleges that private individuals, whom he identifies as the BOSS non-profit

11  organization, "knowingly encouraged and aided by the government, illegally seized his

12  welfare entitlement, rental rebate, and interfered with his position in the transitional housing

13  contract, together with interfering in his rights under the Landlord-Tenant Act."  Complaint

14  at 52.  In addition, plaintiff alleges that "[d]efendants have allowed the grossly and blatantly

15  incompetent and most unscrupulous individuals automatic access to [p]laintiff's most

16  private and sensitive personal information contained in his case file."  Id.

17      The Fourth Amendment proscribes "unreasonable searches and seizures."  U.S.

18  Const. amend. IV; Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1995).  A "seizure" of

19  property occurs when there is some meaningful interference with an individual's

20  possessory interests in that property.  See U.S. v. Jacobsen, 466 U.S. 109, 113 (1984).

21  The Supreme Court, however, has consistently construed this protection as proscribing

22  only governmental action; it is wholly inapplicable "to a search or seizure, even an

23  unreasonable one, effected by a private individual not acting as an agent of the

24  Government or with the participation or knowledge of any governmental official."  Id.

25      Preliminarily, as has been noted several times, plaintiff can only proceed if at all,

26  against defendants Bates and Cheema, owing to the immunity to be granted to the other

27  two defendants.  As to these defendants, plaintiff fails to allege the requisite "governmental

28

United States District Court

For the Northern District of California

1    action" that would permit the Fourth Amendment's proscriptions to be applied to them.

2    Plaintiff makes absolutely no factual allegations regarding Mr. Bates' involvement in any

3    alleged seizure, let alone any allegations regarding Mr. Bates' participation with any

4    government entity in connection with the alleged seizures.  Indeed, Mr. Bates is nowhere

5    mentioned in plaintiff's charging allegations regarding this claim.  Even if he were, as a

6    local city official, he cannot be sued under the Fourth Amendment directly, as this

7    amendment binds only the federal government, and the state governments (via operation

8    of the Fourteenth Amendment).

9        As for Ms. Cheema, while plaintiff states elsewhere in his complaint that she

10   "withdrew [plaintiff's] rebate," see Complaint at 5, plaintiff fails to allege any supporting facts

11   demonstrating that such rebate withdrawal was unlawful, or any facts demonstrating that

12   Ms. Cheema was involved in any of the other "seizure" actions that plaintiff complains of.

13   More critically, however, even if plaintiff had done so, plaintiff fails to allege supporting facts

14   demonstrating that Ms. Cheema, being a private individual, was an instrument or agent of

15   the government, or was otherwise directly involved in a seizure of plaintiff's property in

16   coordination with the government.  See United States v. Young, 153 F.3d 1079, 1080 (9th

17   Cir.1998) ("The Fourth Amendment limits searches conducted by the government, not by a

18   private party, unless the private party acts as an 'instrument or agent' of the government.").

19   It is true that plaintiff alleges that BOSS has connections to, and is acting as the agent of,

20   local government.  See Complaint at 51.  However, BOSS has not been sued.  Without

21   more, these allegations are insufficient to demonstrate that Ms. Cheema was acting as a

22   government agent.  More importantly, as just noted, the Fourth Amendment binds only

23   state and federal government actions.  Accordingly, plaintiff cannot satisfy the

24   governmental action requirement under the Fourth Amendment by alleging Ms. Cheema's

25   involvement and participation with local government.

26       Since plaintiff has not adequately alleged the governmental action necessary for his

27   Fourth Amendment claim, the court need not reach the merits of plaintiff's claim.  See Jean

28

United States District Court

For the Northern District of California

1   v. Nelson, 472 U.S. 846, 854 (1985)("Fundamental principles of judicial restraint require

2   federal courts to consider nonconstitutional grounds for decision prior to reaching

3   constitutional questions."); McMichael v. County of Napa, 709 F.2d 1268, 1271 (9th

4   Cir.1983)(a federal court should decide constitutional questions only when it is impossible

5   to dispose of the case on some other ground).  The claim is hereby dismissed.

6                                    **CONCLUSION**

7          In accordance with the foregoing, the complaint is DISMISSED in its entirety.  The

8   dismissal is with LEAVE TO AMEND.  In any amended complaint, plaintiff must allege

9   separate, properly numbered causes of action; must state a specific constitutional or

10  statutory basis for *each separate cause of action*; must allege facts supporting the

11  elements of each separate cause of action, including the dates of the alleged wrongful acts;

12  must allege facts showing *each defendant*'s personal involvement in the wrongful act

13  alleged in each cause of action; and must allege the resulting harm or injury.

14         Any amended complaint must be filed no later than **April 30, 2007**.  If the amended

15  complaint is not filed by that deadline, or if it fails to comply with the directions stated

16  above, the court will dismiss the action.[7]

17  **IT IS SO ORDERED.**

18  Dated: March 30, 2007

19                                          _____
                                            PHYLLIS J. HAMILTON
20                                          United States District Judge

21

22

23

24

25

26  ─────────────────────

27         [7]      The court also holds that plaintiff's Requests for Judicial Notice, filed on
    December 13 and 15, 2006, are DENIED, as they fail to satisfy the requirements for judicial
28  notice as set forth in Federal Rule of Evidence 201.